23-MJ-8178-PGL

## AFFIDAVIT OF SPECIAL AGENT JASON TAYLOR
## IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Jason Taylor, being sworn, state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I was appointed to the FBI in May 2019. As such, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code: that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2. I am currently assigned as a Special Agent to the FBI Metro Boston Gang Task Force ("MBGTF"). My duties include working as a liaison between federal, state, and local law enforcement entities in the investigation of illegal distribution of narcotics, firearm offenses, and associated gang-related violent crimes. In the course of participating in investigations of drug distribution/trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs and firearms, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings. Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, to include their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply. I am familiar with narcotics traffickers' methods of operation, including distribution, storage, and transportation of narcotics.

3. Prior to my current assignment, I was assigned to the FBI Miami Field Office where I conducted investigations in Transnational Organized Crime Western Hemisphere. Prior to the

assignment in Miami, I was a United States Army Infantry Officer where I conducted Counter Terrorism and Counterinsurgency Operations.

4.      Based on my training and experience as a Special Agent, I am familiar with federal narcotics laws. I know that it is a violation of Title 21 U.S.C. § 841(a)(1), for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, including fentanyl. I submit this affidavit in support of a Criminal Complaint charging Amani BATTLE ("BATTLE"), a/k/a "SHOTTS," born 2003, with violating 21 U.S.C. § 841(a)(1) (possessing with intent to distribute, and distributing, fentanyl).

5.      I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the FBI and other federal, state and local law enforcement agencies.  I submit this affidavit for the limited purpose of establishing probable cause to believe BATTLE has committed the above offenses. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## PROBABLE CAUSE

6.      The FBI and the Boston Police Department ("BPD") are involved in an ongoing investigation of BATTLE.  Pursuant to the investigation, law enforcement officers have determined that BATTLE is selling fentanyl in the Boston area. As part of the investigation,

BATTLE has sold controlled substances, particularly fentanyl, to an FBI Undercover Employee ("UCE-1")[1].

7.  On April 26, 2023, BATTLE communicated with UCE-1 through a series of phone calls and text messages, during which BATTLE agreed to sell half a "key" of fentanyl for $17,500 to UCE-1. Based on my training and experience, the term "key" is common drug jargon for a kilogram. Thus, BATTLE agreed to sell 500 grams of fentanyl to UCE-1. During these initial communications, the two parties agreed to meet at a residence used by BATTLE, hereinafter referred to as "TARGET LOCATION – 1."[2]

8.  Following the series of communications between BATTLE and UCE-1, investigators searched UCE-1 and his/her vehicle for contraband and money with negative results. Investigators also provided UCE-1 with $17,500 of official agency funds ("OAF") to complete the drug purchase and an audio/video recording device and a transmitter, which recorded the controlled purchase. Investigators subsequently surveilled UCE-1 to TARGET LOCATION – 1 in Boston, MA, where the drug transaction would take place with BATTLE. At approximately the same time, other investigators established surveillance at TARGET LOCATION – 1. Investigators observed UCE-1 arrive at TARGET LOCATION – 1 and enter the residence. Investigators were also able to observe BATTLE meet with UCE-1. UCE-1 informed agents that UCE-1 entered TARGET LOCATION – 1 and engaged in a brief conversation with BATTLE. BATTLE told UCE-1 to follow him into the basement of the residence. While in the basement, BATTLE provided UCE-1 with a black plastic bag which contained three individually-packaged

---

[1] UCE-1 is a certified Federal Bureau of Investigation employee. UCE-1's identity is known to law enforcement officials.

[2] I am aware that TARGET LOCATION – 1 is BATTLE'S residential address in Boston, MA. I am not including that specific address for the purpose of this affidavit in support of a criminal complaint.

plastic bags, each containing a white powdery substance. UCE-1 provided BATTLE the $17,500 of OAF in exchange for the substance. UCE-1 identified BATTLE as the person from whom he purchased the substance. The information from UCE-1 was consistent with communications and recordings of the deal.

9. After UCE-1 left the vicinity of TARGET LOCATION – 1, investigators surveilled UCE-1 to a predetermined location and UCE-1 provided investigators with a black plastic bag which contained three individually-packaged plastic bags, each containing a white powdery substance. Investigators then searched UCE-1 and his/her vehicle again, with negative results. The white substance obtained by UCE-1 from BATTLE weighed approximately 513.0 grams – consistent with the previously agreed-upon weight for the fentanyl deal. The white powdery substance field tested positive for the presumptive presence of fentanyl.

## **CONCLUSION**

10. Based on the foregoing, there is probable cause to believe that on or about April 26, 2023, in Boston, in the District of Massachusetts, BATTLE did knowingly and intentionally possess with intent to distribute, and distribute, fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

I declare the foregoing is true and correct.

*Jason Taylor /by Paul G. Levenson*
Jason Taylor
Special Agent, FBI

The affiant appeared before me on this date, by telephonic conference or other reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Subscribed and sworn to on this __12th__ day of May, 2023.

_____
HONORABLE PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS